DAS:PT
F# 2012R00161

M 12- 199

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

YING WAI PHILLIP NG and
PUI KUEN NG,

Defendants.

- - - - - - - - - - - - - - - - -X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF
ARREST WARRANTS

(18 U.S.C. § 1349)

EASTERN DISTRICT OF NEW YORK, SS.:

JIMMY JINN, being duly sworn, deposes and says that he is a Special Agent with United States Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

Upon information and belief, in or about and between January 2002 and February 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PUI KUEN NG and YING WAI PHILLIP NG, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause to be placed in a post office and authorized depository for mail matter, one or more matters and things to be sent and delivered by the United States Postal

Service, to wit: envelopes containing fraudulently obtained commercial driver's licenses and commercial driver's license Class B permits, contrary to Title 18, United States Code, Section 1341.

(Title 18, United States Code, Section 1349)

The source of your deponent's information and the grounds for his belief are as follows:[1]

I. Introduction

1. I have been a Special Agent with HSI since 2009. Prior to joining HSI, I worked for an additional fifteen years in federal law enforcement, including seven years as an inspector with the United States Postal Inspection Service, two years as a special agent with the United States Department of Health and Human Services, Office of Inspector General, three years as a special agent with the United States Department of Labor, Office of Inspector General and three years as a corrections officer with the United States Bureau of Prisons. During my eighteen years in federal law enforcement, I have participated in an undercover capacity in numerous investigations and supervised other agents acting in an undercover capacity. The facts set forth herein are based on my personal observations, information

---

[1] Because the purpose of this affidavit is to set forth probable cause to believe that the defendants committed the charged crime, I have set forth only those facts necessary to establish probable cause to arrest.

from confidential sources and witnesses, my discussions with other law enforcement officers and employees of the New York State Department of Motor Vehicles ("DMV"), my review of documents and other evidence, including consensual recordings, and my experience and background as a criminal investigator.

2. During the course of my work for HSI, I have learned that New York law requires that drivers of certain types of commercial vehicles in the State of New York, such as large buses, trucks and trailers, must possess a commercial driver's license ("CDL"). The DMV issues CDLs in the State of New York, in accordance with regulations issued by the United States Department of Transportation.

3. In order to obtain a CDL from the DMV, all applicants must, among other things, pass a written test covering various subjects related to safely driving large vehicles and submit to the DMV a medical form signed by a doctor. The DMV offers this written test (the "CDL Written Test") in English and Spanish, and no other language. The CDL Written Test is in a multiple-choice format: each written question is followed by three possible answers, marked A through C. The CDL Written Test has a total of 95 questions divided into three sections, with no time limit for completion. To pass, an applicant must correctly answer at least 80% of the questions in each test section. The

CDL Written Test is a "closed-book" test, meaning that test-takers are not permitted to consult notes, books or other written materials while they are taking the test.

4. The CDL Written Test is regularly offered at various DMV offices throughout the State of New York. Some DMV offices offer the CDL Written Test on a "walk-in" basis, meaning that an applicant need not reserve a test-taking seat ahead of time. An applicant who passes the CDL Written Test is given a temporary "Class B" CDL permit (a "Class B permit") at the DMV immediately upon passing. About one week after the applicant passes the CDL Written Test, the DMV sends a permanent Class B permit (with an identification photograph) to the applicant by mail. As soon as the applicant receives the Class B permit, he or she is eligible to take the "CDL road test," the last step required to receive an actual CDL. Applicants cannot take the CDL road test until they have received a Class B permit. Holders of Class B permits are also allowed to practice driving commercial vehicles if a CDL-holder is in the vehicle with the permit-holder. After passing the CDL road test, an applicant may immediately obtain a temporary CDL at a DMV office, before receiving a permanent CDL by mail a couple of weeks later.

II. <u>The Defendants And Their Business</u>

5. N&Y Professional Service Line ("N&Y") is a New York corporation doing business at 5114 Seventh Avenue in

Brooklyn, New York (the "N&Y Office"). N&Y is licensed by the DMV as a commercial driving school that may assist applicants in preparing for various driving tests, including the written CDL test and the CDL road test. N&Y advertises its services as a driving school in New York City Chinese-language newspapers. New York Department of State records list the principal officer of N&Y as the defendant YING WAI PHILLIP NG ("PHILLIP NG"). According to the passport application she submitted to the U.S. Department of State, the defendant PUI KUEN NG ("PUI NG") is the wife of PHILLIP NG. Surveillance conducted by law enforcement authorities on more than twenty-five different dates between October 2011 and January 2012 has shown that PUI NG frequently spends much of the business day at the N&Y Office.

III. Undercover Agent's Contacts With PUI KUEN NG

6. On Wednesday, January 11, 2012, an undercover HSI agent (the "UC") entered the N&Y Office, wearing hidden audio and video recording devices. The defendant PUI KUEN NG was present at the N&Y Office when the UC entered.[2] The UC told PUI NG that he needed to take the CDL Written Test.[3] PUI NG asked the UC if

---

[2] The UC identified PUI KUEN NG from a passport photograph.

[3] The UC is a native Chinese speaker and is fluent in Mandarin. I am also fluent in Mandarin. All of the conversations described in this affidavit between the UC and PUI KUEN NG and between the UC and YING WAI PHILLIP NG were conducted in Mandarin, recorded and subsequently translated into English by a court-certified Mandarin-English interpreter. These

he spoke English, and the UC replied that he did not speak English well. Later during the same conversation, the UC said that he could speak some English but would have difficulty passing a written test in English.

7. After some further discussion with the UC, the defendant PUI KUEN NG gave the UC papers with sample test questions written on them and told the UC that on the day of the test the UC should tell DMV personnel that he wanted to take the "CDL test," and specifically the parts of the exam covering "general knowledge," "air brake" and "passenger." She also gave the UC additional documents, including the medical form CDL applicants must submit to the DMV. PUI NG then wrote the figure "$1,800" on a piece of paper that she gave to the UC which listed fees for various service N&Y offered, pointed at the figure, and told the UC to bring that amount of money with him on the day he took the CDL Written Test. PUI NG further told the UC to give the money to a man who would pick up the UC at 7:30 a.m. the morning he took the CDL Written Test. The UC told PUI NG that he wanted to receive the CDL in the mail at an address in Brooklyn where he lived (the "Brooklyn Address"), and provided this address to PUI NG, who wrote it on a form she had in the N&Y Office. The UC then asked what would happen if he didn't know

---

translations are draft translations, and are described in sum and substance unless otherwise noted.

how to take the CDL Written Test when he was taken to the DMV. PUI NG replied "He will teach you what to do at that time... So you don't have to worry about it."

8. On Thursday, January 26, 2012, the UC returned to the N&Y Office and again met with the defendant PUI KUEN NG. The UC recorded this meeting using a hidden audio recording device. During this meeting, the UC confirmed to PUI NG that he wanted to take the CDL Written Test, and that he wished to do so the following Wednesday, February 1, 2012. PUI NG then confirmed that the UC lived at the Brooklyn Address, and told the UC that someone would pick up the UC at the Brooklyn Address at 7:30 a.m. the following Wednesday.

9. The UC then told the defendant PUI KUEN NG that a prospective employer wanted to hire the UC to drive a bus, and the UC asked PUI NG whether the UC would definitely pass the CDL Written Test. The defendant PUI KUEN NG assured the UC that he would have no problem passing the CDL Written Test. She also said that if a problem arose with the written CDL test, the UC would get his money back.

10. The UC further stated that he was afraid that his prospective employer would wonder how the UC could pass the CDL Written Test, since the prospective employer knew that the UC did not speak English. The defendant PUI KUEN NG promised that if the UC's prospective employer called her, she would not tell the

prospective employer how the UC passed the test. She further told the UC to bring $1,800 with him to the test on Wednesday.

11. On January 31, 2012, the UC received and recorded a telephone call from the defendant PUI KUEN NG.[4] During this call, PUI NG confirmed that the UC would take the CDL Written Test the next day, February 1, 2012. The UC further told PUI NG that if his prospective employer called her, she could not tell the prospective employer that the UC passed the CDL Written Test fraudulently. PUI NG agreed.

IV. Undercover Agent's Contact With YING WAI PHILLIP NG

12. On February 1, 2012, at approximately 7:30 a.m., the defendant YING WAI PHILLIP NG arrived at the Brooklyn Address driving a silver Toyota Sienna minivan with New York license plate number QQQ777 (the "Minivan"). The UC, who was wearing a hidden audio and video recording device, entered the Minivan. PHILLIP NG identified himself to the UC as the defendant PUI KUEN NG's husband.[5]

13. The defendant YING WAI PHILLIP NG drove the UC to the DMV office at 1775 South Avenue in Staten Island, New York

---

[4] The UC identified PUI KUEN NG's voice from his two previous meetings with her. Further, telephone records reveal that this call was placed from the telephone number 718-686-0326, a number registered to N&Y at the N&Y Office.

[5] The UC had previously seen a business card for N&Y that identified the proprietor of the business as "Mrs. Ng." The UC also identified YING WAI PHILLIP NG from a passport photograph.

(the "DMV Office") in the Minivan. During the drive to the DMV Office, PHILLIP NG confirmed that the DMV would mail a temporary CDL to the UC. PHILLIP NG further agreed that he would not tell the UC's prospective employer that the UC had cheated on the CDL Written Test.

14. Upon reaching the public parking lot outside the DMV Office, the defendant YING WAI PHILLIP NG parked the Minivan. PHILLIP NG handed the UC a paging device (the "paging device") and told the UC to attach it to his belt. PHILLIP NG also handed the UC a dark "varsity-style" jacket with light sleeves to wear (the "Jacket"). PHILLIP NG told the UC that when the UC wore the Jacket, PHILLIP NG would "be able to see the test. I'll teach you how I can see the test." PHILLIP NG showed the UC that the right sleeve snap button of the Jacket contained a hidden camera. PHILLIP NG then opened a television screen that was built into the ceiling of the Minivan. PHILLIP NG tested the paging device and the hidden camera to ensure that the images captured by the camera could be viewed on the Minivan's television screen and that the paging device properly vibrated when called.

15. The defendant YING WAI PHILLIP NG instructed the UC that if the paging device vibrated twice, the answer to the test question was "a"; if the paging device vibrated four times, the answer was "b"; and if the paging device vibrated six times, the answer was "c." PHILLIP NG then took out a sample CDL

Written Test from a dark briefcase and told the UC to practice pointing the hidden camera at the test questions so they could be viewed on the Minivan's television screen. The UC practiced as instructed. PHILLIP NG then told the UC that "I've helped people with the written test for more than ten years." PHILLIP NG also told the UC that the UC must be careful because applicants must "understand English" and were not allowed to have an interpreter or a "helper."

16. After receiving these instructions, the UC left the Minivan, entered the DMV Office and began the CDL Written Test.. During the course of the CDL Written Test, the UC pointed the hidden camera at each test question as instructed by the defendant PHILLIP NG. After doing so, the paging device on the UC's belt vibrated two, four or six times. The UC marked all of the answers as instructed by these signals. The UC passed the CDL Written Test, correctly answering 86 out of 95 total questions. The UC then paid the DMV $12.50 for a Class B permit.

17. After completing the CDL Written Test the UC returned to the Minivan in the DMV parking lot. Inside the Minivan, the UC returned the Jacket and the paging device to the defendant YING WAI PHILLIP NG. The UC then handed PHILLIP NG $1,800 in cash, and PHILLIP NG drove the UC back to the Brooklyn Address.

V. Other CDL Applicants Associated With N&Y

18. After passing the CDL Written Test, CDL applicants must take the CDL road test. During this road test, a DMV employee observes the applicant driving a bus or truck, to determine whether the applicant is competent to drive such vehicles. The DMV does not provide CDL applicants with a bus or truck to use when taking the CDL road test, so the applicant must bring such a vehicle with them on the test date. Often, a CDL applicant takes the CDL road test in a truck or bus owned by a driving school where the applicant had previously enrolled. All licensed driving schools must submit to the DMV a list of vehicles that the driving school uses for driver training.

19. According to DMV records, during the time period January 2010 through the present, N&Y used several specific vehicles registered with the DMV (the "N&Y Vehicles") for purposes of training applicants for the CDL road test. DMV records further reveal that between January 2010 and February 23, 2012, approximately 720 CDL applicants used one of the N&Y Vehicles to take the CDL road test. In addition, according to DMV records, more than 300 CDL applicants in the year 2011 signed up through N&Y to take the CDL road test, using an on-line scheduling system.

VI. Conclusion

20. WHEREFORE, I respectfully request that warrants be issued for the arrest of the defendants PUI KUEN NG and YING WAI PHILLIP NG so that they may be dealt with according to law. I further request that this Affidavit and the arrest warrants be filed under seal until further order of the Court to prevent the flight of the target, destruction of evidence and tampering with witnesses.

Jimmy Jinn
Special Agent
Homeland Security Investigations

Sworn to before me this
27th day of February, 2012

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK