

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

PKC:PT  
F.# 2012R00161

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 7, 2012

**BY HAND & ECF**

The Honorable Robert M. Levy  
United States Magistrate Judge  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

>       Re:   United States v. Ying Wai Phillip Ng
>             Magistrate Docket No. 12-199

Dear Judge Levy:

      The government respectfully submits this letter in anticipation of the above-referenced defendant's detention hearing on March 7, 2012.  For the reasons set forth below, the government urges the Court to enter a permanent order of detention because there are no bail conditions that would assure the defendant's appearance.  As set forth in the government's initial detention letter, which was filed on March 1, 2012, the defendant has strong ties to Hong Kong, a jurisdiction adjacent to the People's Republic of China ("PRC").  The United States has no extradition treaty with the PRC.  Moreover, the government's investigation of the defendant and the Brooklyn driving school ("N&Y") that he operates with his wife (a co-defendant) has revealed that the driver of a bus involved in a crash in Virginia in 2011 is likely a former student at N&Y.  Four people were killed and dozens were injured in that crash.  In addition, the government's investigation since the filing of the initial detention letter has revealed even stronger evidence of the defendant's guilt than was then known.

I.    Newly Learned Facts

      The government incorporates by reference the facts proffered in its detention letter of March 1, 2012, as well as the facts sworn to in the above-captioned complaint.  The

government also proffers the following additional facts it has since learned. On the morning of March 1, 2012, the defendant was arrested at his Brooklyn residence pursuant to the arrest warrant signed by the Honorable Roanne L. Mann on February 27, 2012 upon presentation of the above-captioned complaint. After his arrest, the defendant was advised of his Miranda rights. The defendant acknowledged that he understood those rights and voluntarily signed a Miranda waiver form.

Following the defendant's waiver of his Miranda rights, law enforcement agents interviewed him. During the interview, the defendant admitted that he had helped approximately fifty applicants for commercial driver's licenses ("CDLs") cheat on the CDL Written Test each year, and that he had been helping applicants cheat on the CDL Written Test for about ten years.[1] The defendant further admitted that he was paid $1,800 in cash by each of the CDL applicants whom he helped cheat.

Also after he was arrested, the defendant signed a written consent-to-search form permitting law enforcement agents to search his residence. Inside the closet of the bedroom the defendant shared with his wife, agents discovered eleven jackets similar to the one used by an undercover agent on February 1, 2012 to cheat on the CDL Written Test with the defendant's assistance. Each of these jackets was outfitted with a sewn-in space for a wire apparatus and a space for a hidden camera. Agents also found in the same closet miniature cameras and a wireless transmitter. In the basement of the defendant's residence, agents found a "tool shop," with supplies including miniature camera equipment and wires of the type that could be

---

[1] In its initial detention letter, the government proffered that approximately 720 CDL applicants had taken the CDL road test using vehicles registered to N&Y between January 2010 and February 23, 2012. This proffer was based on a mistaken reading of DMV records. While CDL applicants did indeed use N&Y vehicles to take approximately 720 CDL road tests during this period, some of these 720 CDL road tests were taken by individual CDL applicants who took the CDL road test more than once, because they failed the CDL road test at least once before passing. In fact, approximately 175 different individual CDL applicants took the CDL road test using a vehicle registered to N&Y during the referenced period. In any event, as noted above the defendant admitted that he helped approximately 500 different CDL applicants cheat on the CDL written test during the past ten years.

used to connect such camera equipment with a wireless transmitter.

II. Discussion

The government respectfully submits that the newly learned facts described above further support the government's position that the defendant should be remanded. The defendant's confession, as well as the jackets and camera equipment seized from his house, makes the strength of the government's evidence against him even more overwhelming than before – when he had already been captured on tape committing the charged crime. Now knowing that he faces near-certain conviction, the defendant has even more reason to flee.

Further, the defendant's admission that he helped approximately 500 CDL applicants cheat on the CDL Written Test for $1,800 apiece, or a total of $900,000, will likely have a significant impact on his expected Sentencing Guidelines calculation. Even assuming that the defendant's Sentencing Guidelines are calculated upon his improper gains, rather than upon an estimate of the loss suffered by the victims, the defendant's total offense level is increased by an additional fourteen offense levels based on the $900,000 figure. The seriousness of the expected punishment also gives the defendant even more reason to flee.

IV. Conclusion

For all of the above reasons, as well as the reasons stated in its initial detention letter, the government respectfully requests that a permanent order of detention be entered against the defendant.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/_____
Paul Tuchmann
Assistant U.S. Attorney
(718) 254-6294

cc: Zachary Margolis-Ohumna, Esq. (By ECF)